UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

YAN ZHAO,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    06-CV-106S

UNITED STATES OF AMERICA,

                              Defendant.

# I.  INTRODUCTION

Plaintiff, Yan Zhao, alleges that a United States Customs and Border Protection officer physically and unlawfully assaulted her. She brings her claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).

Presently before this Court is Defendant's motion to dismiss under Rule 12(b)(1) and Plaintiff's motion for partial summary judgment. For the following reasons, Defendant's motion to dismiss is granted and Plaintiff's motion for partial summary judgment is denied.

# II.  BACKGROUND

## A.    Facts[1]

Both parties agree that on July 21, 2004, Yan Zhao, a Chinese citizen, was involved in an altercation with Customs Officer Robert Rhodes III in the immediate vicinity of the Rainbow Bridge in Niagara Falls, New York.[2] (Def's St., ¶ 1; Docket No. 94.) For the

---

[1]This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s State." and "Def.'s State." respectively) to the extent that they have not been controverted by the opposing party. See L. R. Civ. P. 56(a)(2) (statements not specifically controverted are deemed admitted).

[2]In her amended complaint, Zhao also alleges that two other Customs and Border Patrol officers – Emmet Russell and Amina Zinnerman – were  involved in this altercation. But neither the amended complaint nor the statements of facts from either party provide any details on the extent of their involvement. In any event, their involvement is irrelevant to the motions currently before this Court.

purposes of this motion, it suffices to note that the parties maintain vastly different versions of the circumstances of that altercation, with Zhao contending that Rhodes chased her down without provocation, grabbed her arm, pepper sprayed her, and slammed her head into a wall; and Rhodes maintaining that he suspected her of criminal activity and did not use excessive force in detaining her. But the factual dispute is not the subject of the motions pending before this Court. Instead the events and litigation that followed this altercation currently play a more significant role.

In that vein, this is the fourth lawsuit arising out of the events on July 21, 2004. The first suit began on July 22, 2004, when, as a result of his interaction with Zhao, Rhodes was arrested and charged with a violation of 18 U.S.C. § 242, which makes unlawful the "deprivation of rights under color of law." (Pl.'s State., ¶ 7; Docket No. 96-1.) A federal grand jury later indicted Rhodes. At trial, however, a petit jury found that the Government failed to meet its burden, and acquitted Rhodes in September of 2005.

Rhodes himself also initiated two cases. In those tandem cases, Rhodes sued the United States (and several agents of the United States in a separate, <u>Bivens</u> action[3]), arguing that his arrest was unjustified. (<u>Id.</u>, ¶ 11.) The Government eventually moved for summary judgment, contending, *inter alia*, that the arrest was based on probable cause. To support this position, the Government cited eyewitness affidavits that attested to the unlawful use of force on Zhao. (<u>Id.</u>, ¶¶ 12–13.) On March 7, 2012, this Court, finding that probable cause did exist, granted the Government's motion and closed both cases. <u>See</u> <u>Rhodes v. United States</u>, No. 07-CV-471S, 2012 WL 777421 (W.D.N.Y. Mar. 7, 2012);

---

[3] <u>See</u> <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388, 389, 91 S. Ct. 1999, 2001, 29 L. Ed. 2d 619 (1971).

Rhodes v. Tevens, No. 07-CV-471S, 2012 WL 777421 (W.D.N.Y. Mar. 7, 2012) (Bivens action), *both affirmed by* 2013 WL 849810 (2d Cir. Mar. 8, 2013).

The current case is the lone remaining suit. As noted, Zhao herself alleges here that Rhodes' use of force on her that day was excessive.

## B. Procedural History

This case began when Zhao filed a complaint in this Court on February 17, 2006. (Docket No. 1.) She amended her complaint on July 28, 2006 and Defendant answered three days later. (Docket Nos. 10, 11.) Defendant later moved to amend its answer, and Magistrate Judge Hugh B. Scott granted that motion in part; the Government then filed its amended answer on November 8, 2011. (Docket Nos. 78, 84, 85.)

After a long interval for discovery – Judge Scott granted several extension requests – on January 15, 2013, both Plaintiff and Defendant filed the motions that are currently before this Court. (Docket Nos. 92, 96.) Briefing thereon concluded April 12, 2013, at which time this Court took the motions under consideration.

## III. DISCUSSION

## A. Defendant's Motion

The Government moves to dismiss the complaint under Rule 12(b)(1) on one discrete issue: Zhao's claims for negligence in the hiring, retaining, supervising, and training of Robert Rhodes. The Government argues that this claim falls under the discretionary-function exception to the FTCA's sovereign-immunity waiver.[4]

---

[4]In the alternative, the Government argues that the claims should be dismissed under Rule 56 because the United States would not be liable to Zhao under New York state law. But because this Court finds that sovereign immunity shields the Government from Zhao's negligent-training cause of action, it need not address the Government's alternative argument for dismissal.

3

### 1. Rule 12(b)(1)

"A 12(b)(1) motion challenges the district court's authority to adjudicate a case, and, once challenged, the burden of establishing that the Court in fact retains such authority lies with the party who asserts jurisdiction." Loew v. U.S. Postal Serv., No. 03-CV-5244, 2007 WL 2782768, at *4 (E.D.N.Y. Feb. 9, 2007) (citing Arndt v. UBS AG, 342 F.Supp.2d 132, 136 (E.D.N.Y. 2004)). The jurisdictional challenge here is based on sovereign immunity, which shields the United States from suit without its consent and strips this Court of jurisdiction. See, e.g., F.D.I.C. v. Meyer, 510 U.S. 471, 475, 114 S. Ct. 996, 1000, 127 L. Ed. 2d 308 (1994). Further, "[w]hile it is generally true that motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standards as motions to dismiss for failure to state a claim under Rule 12(b)(6)," in a challenge to jurisdiction based on sovereign immunity, "the government receives the benefit of any ambiguities." Loew, 2007 WL 2782768, at *4 (citing Team Obsolete Ltd. v. A.H.R.M.A. Ltd., No. 01-1574, 2005 WL 2148981, at *1 (E.D.N.Y. Sept. 7, 2005) and Moreno v. United States, 965 F. Supp. 521, 524 (S.D.N.Y. 1997)).

### 2. The discretionary-function exception

As noted, the United States is immune from suit unless it waives that immunity. United States v. Mitchell, 445 U.S. 535, 538, 100 S. Ct. 1349 , 63 L. Ed. 2d 607 (1980) ("It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued.") (internal citations, quotation marks, and modifications omitted). The FTCA waives the United States' sovereign immunity for claims against "[federal] investigative or law enforcement officers" for "assault, battery, false imprisonment, false arrest, malicious prosecution, [and] abuse of process." 28 U.S.C. § 2680(h). But another section of the

FTCA excepts from the Act's coverage

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

This "discretionary-function exception" – "an exception to the exception," Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013) – is "a form of retained sovereign immunity. As a result, the [FTCA's] waiver of federal sovereign immunity does not encompass actions based upon the performance of, or failure to perform, discretionary functions.'" In re World Trade Ctr. Disaster Site Litig., 521 F.3d 169, 190 (2d Cir. 2008).

This exception "precludes claims based on day-to-day management decisions if those decisions require judgment as to which of a range of permissible course[s] is the wisest." Ortiz v. United States, No. 01 Civ. 4665(AKH), 2002 WL 1492115, at *2 (S.D.N.Y. July 11, 2002) (citing United States v. Gaubert, 499 U.S. 315, 325, 111 S. Ct. 1267, 1273, 113 L. Ed. 2d 335 (1991)). For it to apply, two criteria must be met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis." USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, 681 F.3d 103, 111–12 (2d Cir. 2012).

An act is "discretionary" if it is not compelled by statute or regulation – that is, if an employee has some "rightful option" other than to "adhere to [a] directive [that] specifically

prescribes a course of action for an employee to follow." Gaubert, 499 U.S. at 322 (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). "It is the nature of the conduct, rather than the status of the actor, that governs whether discretionary function exception applies in a given case." Id.

Whether an act is "grounded in considerations of public policy or susceptible to policy analysis" is evaluated based on "the nature of the actions taken," not "the agent's subjective intent in exercising the discretion." Id. at 325.

Applying those standards, courts in this Circuit and throughout the country have routinely held that training, hiring, and supervision decisions are discretionary, and thus, federal courts lack jurisdiction over claims asserting that such acts were performed negligently, or not at all. See Li v. Aponte, No. 05 CV 6237(NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008) (collecting decisions from district courts within the Second Circuit, and those from the First, Fourth, Eighth, and Ninth Circuits).

For example, in Saint-Guillen v. United States, 657 F. Supp. 2d 376, 386 (E.D.N.Y. 2009), the plaintiff sought to hold the United States Probation Office responsible for the negligent training and hiring of one of its officers. But the court dismissed the claim under the discretionary-function exception. Similarly, in Li, the plaintiff alleged that she was abused by a postal service worker, but the court found that "[p]ersonnel decisions of the United States generally fall within the discretionary function exception to the FTCA," and dismissed the claim. 2008 WL 4308127, at *8.

Other courts agree. See, e.g., Xiang Li v. Duncan, No. 5:10-CV-0802 LEK/GHL, 2011 WL 2432915, at *4 (N.D.N.Y. Apr. 18, 2011) ("Personnel decisions of the United States generally fall within the discretionary function exception to the FTCA") (Report and

Recommendation); <u>Carter v. United States</u>, 725 F. Supp. 2d 346, 356 n. 6 (E.D.N.Y. 2010) (if plaintiff had pursued a negligent training theory, "the Court would hold that the hiring, training and supervision of postal inspectors falls within the" discretionary-function exception)*, overturned on other grounds,* 494 Fed. Appx. 148; <u>Cuoco v. U.S. Bureau of Prisons</u>, No. 98 CIV. 9009(WHP), 2003 WL 22203727, at *6 (S.D.N.Y. Sept. 22, 2003) ("[I]nsofar as Cuoco may also assert an FTCA claim for "negligent training, supervision, control and discipline of the defendants" . . . that claim is dismissed, as challenges to the personnel decisions of the United States are barred by the discretionary function exception to the FTCA); <u>Keena v. United States</u>, 927 F.Supp. 62, 64-67 (E.D.N.Y. 1996) (finding claim asserting negligent hiring, supervision, retention and employment to be barred by the discretionary-function exception to the FTCA).

Zhao does not address these cases. Instead, she argues that (1) broadly speaking, the discretionary-function exception does not apply to claims for negligent hiring, training, or supervision and (2) even if it does apply generally, Rhodes violated mandatory directives in his encounter with Zhao, and thus the exception does not apply to this specific case.

Zhao's first argument is statutory in nature. She contends that 28 U.S.C. § 2680(h), which establishes FTCA jurisdiction for "acts or omissions" of law enforcement officers for "any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution," renders the discretionary-function exception inapplicable to her negligent-training claim. Zhao asserts the language "any claim" is expansive and thus eliminates the discretionary-function limitation. The language "arising out of," the argument continues, contemplates discretionary-function claims deriving from assaults, batteries, false arrests, etc.

7

But Zhao is unable to cite any case holding as much. Instead, Zhao relies on Nguyen v. United States, from the Eleventh Circuit, where the court held that the claims articulated in § 2680(h) should not be barred by the discretionary-function exception. 556 F.3d 1244 (11th Cir. 2009). But there were no claims for negligent training, supervision, or hiring in Nguyen – the court considered only claims for false arrest, false imprisonment, and malicious prosecution. Id. at 1250.

More importantly, to the extent the Nguyen holding could be read to eliminate the discretionary-function exception for negligent-training claims, that holding would contradict the law of this Circuit; the Nguyen court itself recognized this. "[F]ive other circuits have taken a different approach about how the two subsections interact," it wrote. "They have concluded that even claims listed in the proviso to § 2680(h) are barred if they are based on the performance of discretionary functions within the meaning of § 2680(a)." The Second Circuit is among those five circuits. In Caban v. United States, 671 F.2d 1230, 1234 (2d Cir. 1982), the court held:

> By its terms, this section [2680(h)] waives the government's immunity to liability arising out of certain intentional torts committed by investigative and law enforcement officers such as the INS agents. We believe that the government is correct in asserting that this subsection must be read in conjunction with the discretionary function exception.

Hence, under this circuit's law, the discretionary-function exception applies to claims under § 2680(h), rendering Zhao's argument null.

Her second argument fares no better. To support her contention that mandatory regulations were violated, she relies on her expert, George Kirkham, D. Crim., who references the "Use of Force" guidelines published by the National Law Enforcement Policy

Center. Among other things, these guidelines instruct that "[o]fficers must be provided with a clear and concise department policy that establishes guidelines and limitations on the use of force generally" and that "law enforcement agencies have a responsibility to ensure that police officers are adequately trained in the use of force that is objectively reasonable." ("Use of Force" guidelines, revised in 2006, attached as Ex. *I*; Docket No. 109.)

But in her brief, Zhao does not indicate to what extent, if at all, these general policies are binding on the Department of Homeland Security. Further, Zhao simply recites several provisions of the policy, and fails to argue, or point to any evidence that would suggest, that Rhodes was *not* trained in accordance with them. While Dr. Kirkham vaguely opines that the Department of Homeland Security violated "mandatory" standards, he does not cite a single statute or regulation to support this conclusion; instead he relies on his own report from 1989. (See Kirkham Decl., ¶ 11, attached as Ex. G; Docket No. 109.) Without clear mandates, whatever training Rhodes received was discretionary, and thus within the confines of the exception. See Flynn v. United States, 902 F.2d 1524, 1531 (10th Cir. 1990) ("There being no fixed standards for training . . . the conduct of the federal employees falls within the discretionary function of the FTCA.").

A case on which Zhao herself relies highlights the shortcomings of her argument. In Vickers v. United States, "a detention enforcement officer with the Immigration and Naturalization Service (INS) shot and seriously injured Miriam Vickers." 228 F.3d 944, 946–47(9th Cir. 2000). The court found that the INS' failure to investigate the shooting was actionable, *i.e.*, was not subject to the discretionary-function exception. But that was because there are statutory regulations directly on point that specifically require officials to conduct such an investigation. As recited by the Vickers court, "Any alleged violation of

9

th[e] [use-of-firearm] standard, according to INS regulations, is to 'be investigated expeditiously.'" Id. at 951 (citing 8 C.F.R. § 287.10(a) and 8 C.F.R. § 287.8(a)(2)). Indeed, the court went on to cite other regulations and INS directives to further demonstrate the mandatory nature of the investigation requirement.

The distinction thus becomes clear: In Vickers, the INS was required to follow directly-applicable regulations, and it thus lacked any discretion in deciding whether to investigate the shooting. But here, Zhao does not point to any specific regulations or directives, and therefore the Department of Homeland Security's training and personnel decisions remained within the boundaries of the exception. See Gaubert, 499 U.S. at 322, 111 (for exception to be inapplicable, there must be a "directive [that] specifically prescribes a course of action for an employee to follow"); Mission of Republic of Namibia, 681 F.3d at 112 (action must be "compelled by statute or regulation").

This Court is also satisfied that "the judgment or choice in question" is "grounded in considerations of public policy or susceptible to policy analysis." See Mission of Republic of Namibia, 681 F.3d at 111–12. Once again, courts in this Circuit and beyond have consistently found that training, hiring, and personnel decisions were the sort contemplated by Congress when it promulgated the discretionary-function exception. See Kelly v. United States, 241 F.3d 755, 762 (9th Cir. 2001); Saint-Guillen, 657 F. Supp. 2d at 387; Li, 2008 WL 4308127, at *8; Amberg-Blyskal v. Transp. Sec. Admin., No. CIV.A. 10-06818, 2011 WL 4470883 (E.D. Pa. Sept. 26, 2011) The reasoning, articulated by the D.C. Circuit, is generally as follows:

> The hiring decisions of a public entity require consideration of numerous factors, including budgetary constraints, public perception, economic conditions, individual backgrounds,

10

office diversity, experience and employer intuition. Similarly, supervision decisions involve a complex balancing of budgetary considerations, employee privacy rights, and the need to ensure public safety. The extent of training with which to provide employees requires consideration of fiscal constraints, public safety, the complexity of the task involved, the degree of harm a wayward employee might cause, and the extent to which employees have deviated from accepted norms in the past. Such decisions are surely among those involving the exercise of political, social, or economic judgment.

Burkhart v. Washington Metro. Area Transit Auth.,112 F.3d 1207, 1217 (D.C. Cir.1997).

This Court, like many before it, finds this reasoning sound. As such, Zhao's claim for the negligent hiring, retaining, supervising, and training of Rhodes must be dismissed under Rule 12(b)(1) because the United States has not waived its immunity with respect to it.

**B.     Zhao's Motion**

Although the negligent-training claim has been dismissed, Zhao's excessive-force claim remains. Pointing to the United States' representations in the civil case brought by Rhodes against the United States, Zhao contends that, under the doctrine of judicial estoppel, the United States is foreclosed from arguing that Rhodes did not use excessive force in detaining her.

**1.     Judicial Estoppel**

"Judicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding." Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997) (citing Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037–38 (2d Cir.1993)). It is designed to "prohibit[] parties from deliberately changing

positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001).

Though the decision to apply the doctrine lies within the court's discretion, the Supreme Court has identified three factors that "typically inform th[at] decision": (1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept the earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. Id. at 750. The Second Circuit has also noted, in accordance with the second factor, that "judicial estoppel prevents a party from asserting a factual position clearly inconsistent with a position previously advanced by that party and adopted by the court in some manner." Republic of Ecuador v. Chevron Corp., 638 F.3d 384, 397 (2d Cir. 2011) (internal quotation marks and modifications omitted). While these factors do not constitute "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel," Maine, 532 U.S. at 749, it is clear is that the doctrine only applies when "the risk of inconsistent results with its impact on judicial integrity is certain." Chevron Corp., 638 F.3d at 397.

Presumably because the Government's position in the criminal case against Rhodes was never "adopted by the court in some manner," see Chevron Corp., 638 F.3d at 397, Zhao does not argue that the United States is judicially estopped as a result of its position therein.[5] Rather, she argues estoppel applies as a result of Rhodes' civil case.

In that case, Rhodes asserted that the United States violated his rights by unlawfully

_____

[5]This Court therefore considers this argument waived. See, e.g., JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 428 (2d Cir. 2005).

and unjustifiably arresting him. The Government disagreed, arguing that there was probable cause for his arrest; and there is no question that, to support its argument, the Government relied on the affidavits of two Custom and Border Patrol officers, who "stated that they witnessed [Rhodes] throw Zhao into a wall, strike her in the head with his knee, and grasp her hair and strike her head on the ground while attempting to apprehend her." Rhodes v. United States, 2012 WL 777336, at *6. This Court ultimately found probable cause did exist, and therefore dismissed that cause of action. Id. at *7; see Zanghi v. Inc. Vill. of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985) (probable cause is a complete defense to an action for false arrest). Based on the affidavits submitted and arguments made in that case, Zhao contends that the United States ought to be judicially estopped from arguing that Rhodes did not use excessive force against Zhao.

The Second Circuit, however, has instructed courts to "carefully consider the contexts in which apparently contradictory statements are made to determine if there is, in fact, direct and irreconcilable contradiction." Rodal v. Anesthesia Group of Onondaga, 369 F.3d 113, 119 (2d Cir. 2004). Undertaking that analysis, and considering the differing contexts, it becomes clear that the United States' statements are not irreconcilable. The Government's position in Rhodes false-arrest case, and the one that was adopted by this Court, was not that Rhodes used excessive force – the position that Zhao now seeks to preclude the Government from denying – but that two officers *believed* Rhodes had used excessive force and that this, in addition to an arrest warrant from a magistrate judge, amounted to probable cause for his arrest. These positions do not directly contradict each other. Accordingly, under the standard articulated by the Second Circuit – that the "risk of inconsistent results with its impact on judicial integrity [be] *certain*" – this Court will deny

Zhao's motion. <u>See</u> <u>Chevron Corp.</u>, 638 F.3d at 397 (emphasis added).

To be clear, this ruling does not foreclose Zhao from introducing the testimony of the two officers who avowed that Rhodes used excessive force while detaining Zhao.

## IV. CONCLUSION

The United States' limited motion, seeking to dismiss Zhao's claims for the negligent hiring, retaining, supervising, and training of Rhodes is granted because this Court lacks jurisdiction over those claims. The Government did not move to dismiss Zhao's claims against Rhodes (and Emmet Russell and Amina Zinnerman) for excessive force, assault, and false arrest. Those claims remain.[6]

Zhao's limited motion, seeking to preclude the United States from arguing that Rhodes did not use excessive force in his altercation with Zhao, is denied because the United States did not take an irreconcilable position in Rhodes' false-arrest case.

---

[6]These claims were not so specifically styled in the amended complaint. Instead, Zhao alleges that the United States, through its officers, "unlawfully and without just cause arrested the plaintiff and in the course of said arrest unlawfully laid hands upon the plaintiff, as well as acted in a malicious, reckless, gross and outrageous manner and/or committed actions which amounted to an assault" and that the officers "detained plaintiff in wanton and malicious disregard for the truth and without her consent, and plaintiff was subject to great humiliation and ridicule and was injured in her credit and reputation." (Am. Compl., ¶¶ 10, 13; Docket No. 10.) In the interests of efficiency, this Court has construed these allegations as asserting claims for assault, false arrest, and excessive force.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's motion to dismiss (Docket No. 92) is

GRANTED, and its motion for partial summary judgment is DENIED as moot.

FURTHER, Plaintiff's motion for partial summary judgment (Docket No. 96) is

DENIED.

SO ORDERED.

Dated:  May 30, 2013
          Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court
